IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROBIN Y. UYESHIRO and DONNA Y.L. LEONG, | Civ. No. 13-00043 ACK-BMK |
| Plaintiffs, | |
| v. | |
| IRONGATE AZREP BW LLC, a Delaware limited liability company, | |
| Defendant. | |

ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION

For the following reasons, the Court DENIES Plaintiffs Robin Y. Uyeshiro and Donna Y.L. Leong's Motion for Reconsideration of Order Granting in Part and Denying in Part Defendant Irongate's Motion to Dismiss First Amended Complaint.

FACTUAL AND PROCEDURAL BACKGROUND

This case is a contract dispute arising out of a Sales Contract between Plaintiffs and Irongate for the purchase of a condominium unit in the Trump International Hotel & Tower at Waikiki Beach Walk in Honolulu, Hawaii. In their First Amended Complaint, Plaintiffs assert claims against Irongate for: (1) unjust enrichment, (2) breach of contract, (3) violation of Hawaii Revised Statutes ("H.R.S.") Chapter 480 (Unfair and Deceptive Trade Practices), (4) violation of H.R.S. Chapter 480

(Unfair Methods of Competition), and (5) fraudulent misrepresentation. A complete discussion of the relevant factual background and contractual provisions is set forth in this Court's Order Granting in Part and Denying in Part Defendant Irongate's Motion to Dismiss First Amended Complaint. (Doc. No. 55 at 3-14.)

Plaintiffs filed their original complaint in state court on December 31, 2012. (Dkt. No. 1, Ex. 1.) On January 28, 2013, Irongate removed the action to this Court, citing both federal question and diversity jurisdiction. (Dkt. No. 1.) Irongate filed a Motion To Dismiss the Complaint on February 19, 2013. (Dkt. No. 6.) The Court granted the motion on September 13, 2013,[1/] dismissing Plaintiffs' Complaint without prejudice, except as to Plaintiffs' claims under Hawaii Revised Statutes section 514B-94 and the federal Interstate Land Sales Act, which the Court dismissed with prejudice. (Doc. No. 27.) Plaintiffs timely filed a First Amended Complaint on October 11, 2013, (Doc. No. 28 ("FAC"),) and Irongate filed its Motion to Dismiss for Failure to State a Claim on October 25, 2013. (Doc. No. 40 ("MTD").) The hearing on the motion was held on January 27, 2014.

---

[1/] On June 14, 2013, the Court granted the parties' joint request for a continuance of the hearing on the motion to dismiss. (Doc. No. 20.) The hearing was therefore held on September 12, 2013. (Doc. No. 25.)

On February 3, 2014, the Court issued its Order Granting in Part and Denying in Part Defendant Irongate's Motion to Dismiss First Amended Complaint. (Doc. No. 55 ("2/3/14 Order").) In the order, the Court denied Irongate's motion as to Plaintiffs' claim for unjust enrichment, but granted it as to the remainder of Plaintiffs' claims, all of which the Court dismissed without prejudice. Plaintiffs filed the instant Motion for Reconsideration on February 17, 2014. (Doc. No. 56 ("Mot.").) Irongate filed its memorandum in opposition on March 3, 2014, (Doc. No. 62,) and Plaintiffs filed their reply on March 17, 2014. (Doc. No. 64.) The Court finds this matter suitable for disposition without a hearing pursuant to Local Rule 7.2(d).

**STANDARD**

In the Ninth Circuit, a successful motion for reconsideration must accomplish two goals. First, it must demonstrate some reason why the court should reconsider its prior decision. Na Mamo O 'Aha 'Ino v. Galiher, 60 F. Supp. 2d 1058, 1059 (D. Haw. 1999). Second, it must "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Id. Courts have established three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1178–79 (9th

3

Cir. 1998); <u>Great Hawaiian Financial Corp. v. Aiu</u>, 116 F. R. D. 612, 616 (D. Haw. 1987), <u>rev'd on other grounds</u>, 863 F.2d 617 (9th Cir. 1988).[2/]

Mere disagreement with a previous order is an insufficient basis for reconsideration. See <u>Leong v. Hilton Hotels Corp.</u>, 689 F. Supp. 1572 (D. Haw. 1988). "Whether or not to grant reconsideration is committed to the sound discretion of the court." <u>Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation</u>, 331 F.3d 1041, 1046 (9th Cir. 2003) (citation omitted).

## DISCUSSION

In the instant motion, Plaintiffs argue that the 2/3/14 Order contained manifest errors of law because it applied the incorrect standard of review to Irongate's Rule 12(b)(6) motion. Specifically, Plaintiffs assert that the Court erroneously

---

[2/] The District of Hawaii has implemented these standards in Local Rule 60.1, which states, in relevant part:

> Motions for reconsideration of interlocutory orders may be brought only upon the following grounds:
>
> (a) Discovery of new material facts not previously available;
> (b) Intervening change in law;
> (c) Manifest error of law or fact.
> Motions asserted under Subsection (c) of this rule must be filed and served not more than fourteen (14) days after the court's written order is filed.

"decided issues of fact as a matter of law," and "burdened Plaintiffs with the requirement of supporting their factual allegations with evidence." (Mot. at 1.) First, Plaintiffs assert that the Court erred in determining that the terms of the Third Party Rental Management Agreement ("TP-RMA") were consistent with the terms of the Sales Contract and attached documents. (See id. at 3-7.) Plaintiffs note that the Court stated in its 2/3/14 Order that they had "presented no evidence that the TP-RMA altered the Sales Contract," and that the Court need not accept as true Plaintiffs' "legal conclusion that the provisions of the TP-RMA constituted a material change in the condominium project." (Id. at 4 (quoting 2/3/14 Order at 28).) Plaintiffs argue that this language indicates that the Court improperly required Plaintiffs to present evidence at the motion to dismiss stage, and improperly decided a question of fact (whether the TP-RMA was consistent with the Sales Contract) as a matter of law.

Plaintiffs' arguments, however, appear to misunderstand or mischaracterize the Court's Order, and do not demonstrate that the Court committed manifest error in concluding that Plaintiffs failed to state a claim for breach of contract, fraudulent misrepresentation, unfair and deceptive trade practices, and unfair methods of competition. As Plaintiffs correctly point out, and as this Court stated in its 2/3/14 Order, on a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as

true and construed in the light most favorable to the nonmoving party. Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012); see also 2/3/14 Order at 14. To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

When ruling on a 12(b)(6) motion, "a court may consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into one for summary judgment."[3/] U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003); see also Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1160 (9th Cir. 2012). Importantly, in such cases, the Court need not accept as true allegations that contradict documents that are referenced in the complaint or that are properly subject to judicial notice. See Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008). Nor is the court required to accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

---

[3/] Plaintiffs acknowledge as much in their reply. (See Reply at 2 n.2.)

Here, Plaintiffs attached as exhibits to their First Amended Complaint the Sales Contract (Ex. A), Condominium Declaration (Ex. B), Unit Maintenance and Operating Agreement (Ex. C), Developer Sponsored Transient Rental Program Agreement (Ex. D), and Third Party Transient Rental Program Agreement (Ex. E). (See Doc. No. 28.) The Developer's Public Report for a Condominium, while not attached to the First Amended Complaint, was filed with the Department of Commerce and Consumer Affairs of the State of Hawaii, and also filed as Exhibit 3 to Irongate's motion to dismiss. (See Doc. No. 40.) Further, all of these documents (including the Public Report) are quoted and referenced extensively in the First Amended Complaint. (See, e.g., FAC at 3-10.) As such, the Court properly considered these documents when addressing Irongate's motion to dismiss. See, e.g., Davis, 691 F.3d at 1160.

The specific language in the 2/3/14 Order to which Plaintiffs object, when taken in its full context, indicates that the Court examined the terms of the TP-RMA and the Sales Contract and incorporated documents (all either attached as exhibits to the First Amended Complaint or incorporated by reference) and concluded that the terms of the TP-RMA were not inconsistent with those of the Sales Contract. (See 2/3/14 Order at 24-28 (detailing and analyzing provisions in the TP-RMA and Sales Contract and incorporated documents).) Plaintiffs nevertheless

argue that the Court erroneously ignored their allegations in the First Amended Complaint that the provisions of the TP-RMA were inconsistent with industry custom and practices. (See Mot. at 6-7; Reply at 3-4.) Plaintiffs make a number of references in the First Amended Complaint to the "customs and practices of the hospitality industry in Hawaii." (See FAC at 10, 18, 20, 21, 27, 29.) Plaintiffs allege that certain provisions of the TP-RMA are "not customary," or inconsistent with such customs and practices; however, as the Ninth Circuit has made clear, the Court was not obligated to accept as true Plaintiffs' allegations that the TP-RMA constituted a material change to the Sales Contract (based on the Plaintiffs' allegations regarding customary practices) where those allegations conflicted with the clear language of the TP-RMA and contract documents properly before the Court. See, e.g., Lazy Y Ranch, 546 F.3d at 588.[4]

Moreover, many of Plaintiffs' allegations regarding custom are conclusory in nature. (See, e.g., FAC ¶ 80 (allegation

---

[4] Further, a careful reading of the 2/3/14 Order reveals that, in stating that the Plaintiffs "presented no evidence" of inconsistencies between the TP-RMA and the Sales Contract, the Court was merely contrasting the instant case with the Goldberg v. 401 N. Wabash Venture LLC, 904 F. Supp. 2d 820 (N.D. Ill. 2012) case, a summary judgment case that Plaintiffs attempted to rely upon in arguing that the Court could not, as a matter of law, determine whether the TP-RMA constituted a material change to the Sales Contract. (See 2/3/14 Order at 27-28.) The Court was not, as Plaintiffs assert, requiring Plaintiffs to present evidence (as opposed to sufficient factual allegations) at the motion to dismiss stage.

that "Irongate made disclaimers and representations in the Sales Contract and Project Documents that led Plaintiffs to reasonably believe that their ability to rent Unit 805 was not materially limited, and that they could opt for third-party rental of Unit 805 consistently with the established custom and practice regarding such arrangements for other condominium hotel projects in the State of Hawaii.")). Such conclusory allegations are insufficient to defeat a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 686 (2009) ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."); Johnson v. Lucent Technologies Inc., 653 F.3d 1000, 1010 (9th Cir. 2011) ("Conclusory allegations and unwarranted inferences . . . are insufficient to defeat a motion to dismiss."). The Court thus committed no manifest error in concluding that the TP-RMA did not represent a material change to the Sales Contract.

Plaintiffs next argue that the Court's 2/3/14 Order also erred in "rendering legal conclusions about the requirements of the 'First Class Standard.'" (Mot at 12.) Plaintiffs assert that the Court concluded as a matter of law that the terms of the TP-RMA are consistent with the First Class Standard. The actual text of the 2/3/14 Order, however, belies this claim.

As discussed above, the Court properly considered the contract documents in addressing Irongate's motion to dismiss.

9

Further, the language Plaintiffs appear to object to as a "legal conclusion" regarding the First Class Standard was language that the Court directly quoted or paraphrased from the contract documents themselves. (See 2/3/14 Order at 30-31 (noting the contract documents' characterization of the condominium units as "hotel units" in a "resort destination operating pursuant to the First Class Standard." (quoting Public Report at 3)); 2/3/14 Order at 39 (referencing the quoted language on pages 30-31 of the 2/3/14 Order and citing to the Public Report at 3).) The Court did not, as Plaintiffs assert, make any legal conclusions as to the meaning of the First Class Standard. Rather, the Court concluded after examining numerous provisions in the TP-RMA and the Sales Contract and incorporated documents that the TP-RMA was entirely consistent with the Sales Contract. As discussed above, because the contract documents were properly before the Court, the Court's consideration of those documents in reaching this conclusion did not constitute manifest error.

Plaintiffs further argue that the Court erred in "deciding as a matter of law that the securities-related disclaimer" in the Condominium Declaration was a limitation on third-party rentals. (Mot. at 16.) Again, however, a careful reading of the Court's 2/3/14 Order reveals this assertion to be a mischaracterization of the order. Plaintiffs argued in their opposition to Irongate's motion to dismiss that, based on the

Sales Contract and incorporated documents, they "reasonably believed that Irongate would not materially limit their ability to rent" their unit, either by themselves or through a third party agent. (Opp'n (Doc. No. 50) at 5.) In making this argument, Plaintiffs specifically pointed to the securities-related disclaimers in the contract documents, arguing that these disclaimers contributed to Plaintiffs' belief that their ability to rent out their unit would be unrestricted. (See id. at 4-5.) As discussed above, however, the Court was not required to take as true Plaintiffs' allegations that were directly contradicted by the contract documents properly before the Court. See Lazy Y Ranch, 546 F.3d at 588. It was thus highly relevant that one of the securities-related disclaimers in the contract documents contained language specifically contemplating restrictions on rentals. The Court noted this language, among numerous other contract provisions, in concluding that Plaintiffs' allegations that the TP-RMA was inconsistent with the Sales Contract were contradicted by the contract documents themselves and thus insufficient to withstand a motion to dismiss. (See 2/3/14 Order at 24-26.) The Court did not, as Plaintiffs claim, make any specific factual or legal findings regarding the applicability of the securities disclaimer in the Condominium Declaration to third party rental arrangements.

Plaintiffs also appear to argue that the securities disclaimer in the Condominium Declaration contained an exhaustive, rather than illustrative, list of the potential restrictions on unit owners' rights to use their units under any potential rental program. (See Mot. at 17-18.) The disclaimer states that "any rental program that may become available . . . will most likely place severe restrictions on a Hotel Unit Owner's rights to use said Owner's Hotel Unit, including imposing blackout periods or other date restrictions on use of the Hotel Unit that are in addition to the restrictions and requirements imposed by this Declaration." (MTD, Ex. 4 at 41-42.) Plaintiffs argue that this provision indicated that there may be limitations on their personal use and rental of their unit (through blackout periods or date restrictions) under a developer-sponsored rental program, but did not contemplate any restrictions on rentals through third-party agents. (Mot. at 18.) This argument appears to rest on an assumption that the disclaimer's examples of use restrictions are exhaustive, rather than illustrative.

The Hawaii Supreme Court has generally held that the term "including" is "ordinarily a term of enlargement, not of limitation." Schwab v. Ariyoshi, 564 P.2d 135, 141 (Haw. 1977). Generally, under Hawaii law, "[t]he term 'including' in no way implies exclusivity." Lealaimatafao v. Woodward-Clyde Consultants, 867 P.2d 220, 226 (Haw. 1994). Rather, the term

12

"including" "connotes simply an illustrative application of the general principle." In re Waikoloa Sanitary Sewer Co., 125 P.3d 484, 495 (Haw. 2005). This approach is consistent with the meaning given to the term by the U.S. Supreme Court and courts in other jurisdictions. See, e.g., Fed. Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95, 100 (1941) ("the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle"); Puerto Rico Mar. Shipping Auth. v. Interstate Commerce Comm'n, 645 F.2d 1102, 1112 n. 26 (D.C. Cir. 1981) ("It is hornbook law that the use of the word 'including' indicates that the specified list ... is illustrative, not exclusive").

       In a single case, the Hawaii Supreme Court has held that the use of the term "including" in a contract was ambiguous as to whether it was expressing limitation. See Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 305 P.3d 452, 463 (Haw. 2013). That contract was distinguishable from the one on hand, however. In Wong, the contract specified that a leased property was to be used "only for educational, recreation (including vacation residence for members and staff of Lessee's school and church), agricultural, health care and humanitarian uses. No dwellings shall be constructed or used on the demised premises except for faculty, administrative staff, students and employees." Id. at 462. In the Wong case, the term "including" was embedded in a

13

clause expressly setting forth specific limitations on use.
Nevertheless, the lower court had interpreted the word
"including" as a term of enlargement, concluding that the
reference to "vacation residence" was intended as an example
(rather than a limitation) of a permissible recreational use. The
Supreme Court of Hawaii disagreed, emphasizing that such an
interpretation would render the clause "for members and staff of
Lessee's school and church" superfluous. (Id. at 463 n.11.) The
court stated that "[i]f the parties had intended to identify
vacation residence as an example of recreational use, they could
have done so without referring to a particular category of
persons entitled to use those vacation residences." Id. at 463.
Because the contract expressly modified "vacation residences,"
the court concluded that the parenthetical's use of the term
"including" was at least ambiguous as to whether it was stating a
limitation on who could use the property as a vacation residence.
Id.

        In the instant case, however, there is no similarly
limiting or modifying language, and interpretation of the term
"including" as illustrative would not render other language in
the clause superfluous. The contract clause at issue is a broad
disclaimer intended to generally disclaim any representations
regarding future rental programs. (See Condo. Decl. at 42.) In
this context, the use of the term "including" appears to be in

14

accordance with its customary meaning, and thus may be interpreted as preceding illustrative (rather than exhaustive) examples of restrictions on unit uses. Furthermore, this clause in the Condominium Declaration was only one among many that the Court properly relied upon in finding that the TP-RMA was consistent with the Sales Contract and incorporated documents. (See, e.g., 2/3/14 Order at 25-27.)

Finally, Plaintiffs argue that the Court erred in dismissing their claim for breach of the implied covenant of good faith and fair dealing by improperly deciding factual issues as a matter of law. Plaintiffs assert that "questions of reasonableness of conduct and good faith" are questions of fact to be decided by a jury. (Mot. at 21 (citing Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 839 P.2d 10, 23-24 (Haw. 1992).) The Court notes, however, that this District Court has on a number of occasions dismissed claims for breach of the covenant of good faith and fair dealing at the motion to dismiss stage, where litigants have simply failed to allege facts sufficient to support such claims. See, e.g., Illinois Nat. Ins. Co. v. Nordic PCL Const., Inc., 870 F. Supp. 2d 1015, 1036 (D. Haw. 2012) (granting a motion to dismiss as to a claim for breach of the covenant of good faith and fair dealing pursuant to Federal Rule of Civil Procedure 12(e), finding that the complaint only vaguely alleged that the insurer took "actions inconsistent with their

15

obligations" under the insurance contract); <u>Isagawa v. Homestreet Bank</u>, 769 F. Supp. 2d 1225, 1232 (D. Haw. 2011) (granting dismissal because "Plaintiffs fail to allege any specific facts and solely provide legal conclusions regarding Defendants' purported violation of the implied covenant of good faith and fair dealing."); <u>Sukagawa v. Countrywide Bank F.S.B.</u>, 769 F. Supp. 2d 1211, 1217-18 (D. Haw. 2011) (same).

Moreover, <u>Amfac</u> is distinguishable from the instant case because it involved the court's interpretation of a contractual provision requiring that performance be rendered to the "reasonable satisfaction" of a contracting party. <u>See id.</u> at 23. It did not involve an analysis of whether a party sufficiently alleged a claim for breach of the implied covenant of good faith and fair dealing. A determination of whether performance was rendered to a party's "reasonable satisfaction" necessarily turned upon an analysis of reasonableness. In the context of a claim for breach of good faith and fair dealing, however, the Court must analyze whether a party acted in such a way as to "deprive the other of the benefits of the agreement." <u>Young v. Allstate Ins. Co.</u>, 119 Haw. 403, 427 (Haw. 2008) (quoting <u>Best Place, Inc. v. Penn Am. Ins. Co.</u>, 82 Haw. 120, 123 (Haw. 1996)). As this Court stated in its 2/3/14 Order, where (as here) a contract provides one party with the discretion to act, that party does not violate its duty of good faith and fair

16

dealing when it acts in a manner consistent with the contract. See, e.g., Hawaii Leasing v. Klein, 698 P.2d 309, 313 (Haw. App. 1985) ("Good faith performance 'emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" (quoting Restatement (Second) of Contracts § 205 (1981))). Plaintiffs themselves acknowledged as much in their opposition to the underlying motion to dismiss. (See Opp'n to MTD (Doc. No. 50) at 26 ("A basic requirement of the implied covenant is that a party to an agreement must not violate the spirit of the transaction or deprive the other of the benefit of the bargain. . . . Irongate had discretion to establish the terms of the [rental program agreements] . . . The implied covenant disallowed Irongate from specifying terms in [those agreements] that violate Plaintiffs' reasonable contractual expectations.").)

        Further, the duty of good faith and fair dealing "is to be applied in a manner that will effectuate . . . only the objectively reasonable expectations of [the] parties . . . ." Iron Horse Eng'g Co., Inc., 89 P.3d 1249, 1259 (Or. 2004) (quoting Uptown Heights Associates v. Seafirst Corp., 320 Or. 638, 645, 891 P.2d 639 (1995)). "[T]he duty of good faith cannot serve to contradict an express contractual term[,]" id., nor can it be used "to create new, independent rights or duties beyond those agreed to by the parties." City of Gillette v. Hladky

17

<u>Const., Inc.</u>, 196 P.3d 184, 186 (Wyo. 2008). Here, after considering the contract documents properly before it, the Court concluded that the terms of the TP-RMA were consistent with those of the Sales Contract and incorporated documents. In light of this, the Court necessarily concluded that Irongate, in setting forth the terms of the TP-RMA, had not done so in a manner inconsistent with the parties' expectations based upon the terms of the Sales Contract. Because there was no inconsistency between the documents, the Court could determinate as a matter of law that Plaintiffs failed to state a claim for breach of good faith and fair dealing premised upon the terms of the TP-RMA.

To the extent Plaintiffs make further arguments in support of the instant motion for reconsideration, they generally appear to reiterate those Plaintiffs made in opposition to the underlying motion to dismiss, and thus cannot support reconsideration of the 2/3/14 Order. Mere disagreement with a previous order is simply an insufficient basis for reconsideration. <u>See</u> <u>Leong</u>, 689 F. Supp. at 1573.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motion for Reconsideration of Order Granting in Part and Denying in Part Defendant Irongate's Motion to Dismiss First Amended Complaint.

IT IS SO ORDERED.

18

DATED:  Honolulu, Hawaii, March 24, 2014



_____
Alan C. Kay
Senior United States District Judge